**UNITED STATES of America, Plaintiff,**

v.

**Theodore James COOK, Defendant.**

**Crim. A. No. 84–CR–293.**

United States District Court,
D. Colorado.

Aug. 27, 1985.

Dawn Bowen, William Welch, Asst. U.S. Attys., Denver, Colo., for plaintiff.

Ira M. Long, Jr., Denver, Colo., for defendant.

## MEMORANDUM ORDER ON APPLICATION FOR ATTORNEY FEES

JOHN P. MOORE, Circuit Judge, Sitting by Designation.

This matter is before me upon the application of defendant's counsel for attorney fees pursuant to the provisions of the Criminal Justice Act. Counsel originally sought fees in the amount of $16,628.00, plus reim-

bursement of costs in the amount of $7,550.11, for a total award of $24,178.11. While these are not the figures reflected on the CJA form 20 originally filed by counsel, they are the figures arrived at after consideration of the amended documents filed pursuant to the Court's order of July 16, 1985. A reexamination of costs subsequent to the hearing on this application has resulted in counsel's reduction of costs by $1,160.00.

■■■ At the outset, it is necessary to observe that the application on its face suggests a misperception of the nature of an appointment under the Criminal Justice Act. Such appointments are to protect the rights of the indigent accused, and they are neither to be sought nor made for the purpose of providing income to attorneys. *United States v. Moore*, 258 F.Supp. 790 (D.C.1966); *United States v. James*, 301 F.Supp. 107 (W.D.Tex.1969); *United States v. Harper*, 311 F.Supp. 1072 (D.C.1970); *United States v. Tutino*, 419 F.Supp. 246 (S.D.N.Y.1976). Indeed, acceptance of an appointment under the Act is tantamount to acceptance of a public service. The Congress has seen to it, in the passage of the Act, that the service is not completely onerous, but from the fees authorized by law, it should be abundantly clear to even the novice lawyer the Congress has not intended that the service be remunerative. By the same token, the spirit of public service involved in such an appointment cannot be avoided by increasing the expenditure of hours simply to obtain a fee in keeping with the standards of private practice.

■■■ In short, I view this application with the foregoing notions in mind, bent upon the task the Congress has assigned trial courts to award fees and reimbursement within the strictures of the statute. As a notable patina to these strictures, there is also to be observed a need to avoid a mindless parsimony as well as a vicarious generosity with the taxpayers' money.

Under the terms of 18 U.S.C. § 3006A(d)(1), the guidelines to be applied here are that compensation be based upon time "reasonably expended" and reimbursement be for expenses "reasonably incurred." The ultimate goal to be achieved is "fair compensation" for counsel. 18 U.S.C. § 3006A(d)(3). Given the nature of this case, I must also determine whether it was "complex" or "extended." *Id.* As one might expect, these terms are not without definition.

■■■ Considering first whether compensation in excess of the statutory limit should be allowed, I must deal with the concepts of time and difficulty embodied in the terms "complex" and "extended." Of the two, the latter is the less complex, and it simply refers to a temporal gauge. *United States v. Bailey*, 581 F.2d 984 (D.C. Cir.1978) The former deals with the legal problems encountered in the case and whether they are "significantly greater" than those encountered in the ideal of an "average case." *Id.* Suffice for this case, counsel endured for a period of more than six months. Under any measure, that must meet the temporal standard. As for the complexity of this case, I am less certain; and, but for the disjunctive test posed by the statute, I would be more hesitant.

This case did involve a number of issues—some I judge contrived and some I judge real. There was a lot of paper and other materials disclosed by the government; but given this was a drug conspiracy case in which the investigative techniques of wire and oral interceptions were used, the legal complexity of this suit was not great. Yet, as the decision here is discretionary, *United States v. Bailey, supra,* I believe the case was "complex" if measured against the standard of garden variety federal criminal cases.

■■■ This decision leaves only the examination of the time and expenses claimed in light of the standard of reasonability. Unfortunately, what is reasonable is not subject to strict measure. It is to be determined within the facts of the individual case, considering the time spent, the results achieved, and other factors which the court's judgment lends meaning to the test.

*See Ramos v. Lamm,* 713 F.2d 546 (10th Cir.1983).[1]

■ Upon examination of the application in this case, one is immediately impressed with the number of hours spent outside the court. Indeed, counsel's memorandum respecting fees indicates the expenditure of 323.3 hours. When one considers trial in this case consumed only 27.75 hours, and the voluminous evidentiary hearings and arguments on pretrial motions consumed only another 33.5 hours, the time spent in preparation therefore seems grossly disproportionate. Upon reflection, I believe this may in part be a function of the fact that this was the first criminal trial of any kind conducted by counsel, who has been a member of the practicing bar since October 1982. It is evident here, that counsel spent a great deal of time in educating himself in subject areas a more experienced practitioner would have been familiar with without lengthy study. Notwithstanding the expenditure of time, with which I neither quarrel nor find disputed, the fundamental purposes of the Criminal Justice Act interdicts countenance of the payment of attorney fees for the furtherance of counsel's education. Moreover, it is the duty of the applicant to provide the court with satisfactory evidence the expenditure of time meets the standard of reasonability. *Ramos v. Lamm, supra.* That was not done here even though my order of July 16 specifically requested such information.[2] The onus must fall upon counsel, and not the Court. *Ramos v. Lamm, supra.*

■ Examination also discloses time was spent upon unproductive activity. I also believe the spirit of the Criminal Justice Act prevents compensation for pursuit of avenues that are in concept clearly unsupportable from the beginning. This is not to say the inventiveness of appointed counsel is to be stifled, but it does mean that the taxpayers' money should not be spent either in idle pursuits or in chasing the will-o-the-wisp. *United States v. James, supra.* After examination of the details of the time logs submitted (which are not particularly helpful in understanding what was really done here), I have concluded not more than 75 hours would have been reasonable to expend outside the courtroom. In addition, there is no doubt that 61.25 hours were actually expended in the courtroom. While some of those hours were not productive, I find they were reasonably spent within the context of this case. Applying the statutory rates to these hours, I conclude a fee of $6,675.00 is reasonable.

That brings us to consideration of the claim for reimbursement. The first item is the claim of $5,250.00 for 150 hours of law clerk time billed at the rate of $35.00 per hour. I note initially that rate is not the cost incurred by counsel but the rate which his firm normally bills its clients for the services of the firm's law clerks. Thus, at the very outset we have a tension between what is sought and what the Criminal Justice Act allows; that is, what is essentially a fee as opposed to an expense actually incurred. 18 U.S.C. § 3006A(d)(1).

■ Since the Criminal Justice Act is itself silent on the subject of whether law clerk services are costs which are recoverable, I shall take my guidance from *Ramos v. Lamm, supra,* in which the court of appeals held the costs of law clerks are assumed to be in the overhead of the billing attorney which must be subsumed within the fee. The only exception recognized in *Ramos* to this principle is one allowing for local custom. When that custom is to separately bill for these costs, the court held they are allowable. The only evidence before me in this instance is that counsel's firm bills its clients separately, but despite my suggestion in the order of July 16 to follow the *Ramos* guidelines, no evidence

1. While *Ramos* deals with attorney fees under the Civil Rights Attorney's Fee Act, its precepts are equally applicable here.

2. Counsel was unable to provide the information because his record keeping methods do not lend themselves to the production of information in a format that is meaningful.

was presented to establish the local custom. This failure falls upon the applicant, and I must disallow the reimbursement.

 In no way do I suggest the Criminal Justice Act provides for this kind of a cost as sought here, however. Despite what an attorney customarily bills clients for the services of a law clerk, the "cost" concept embodied in the Criminal Justice Act requires that an attorney's recovery for law clerk costs—if the incurrence of the cost is reasonable—must be limited to counsel's out-of-pocket expenditure for this service.

The next item submitted as a cost is "computer assisted research" in the amount of $1,660.00. After the hearing, at the request of the court, counsel returned to his office records and discovered he had inflated the amount originally sought, and he amended his application to request reimbursement of $500.00 for this claimed expense.[3] Unfortunately, there was only a minimum effort expended to establish the necessity for this form of research over the more traditional, or that the amount of research done was appropriate to the case. This leaves me to speculate, and that is not my function. Accordingly, this cost will be disallowed.

The next cost addressed is a charge for photocopies in the amount of $483.18. This figure represents the total for copies at the rate of 13¢ each. The rate is that which is customarily billed to clients, and it does not represent the actual expense incurred by counsel. While the incurrence of this expense was not unreasonable in light of the number of papers exchanged in this case, once again I am constrained to observe the amount sought bears no evident relationship to the concept of expenses referred to in 18 U.S.C. § 3006A(d)(1). Accordingly, this expense will be disallowed.

**3.** As a parenthetical, this was not the only error of calculation discovered by counsel upon prompting by the court, and it and the other errors in an affidavit and application for pay-

Counsel has submitted receipts for telephone calls and for the delivery of items to other counsel in the case. I have examined these items and find that the expenses were reasonably incurred. Except for the 10 percent "fee" added to the delivery charges, these costs will be allowed.

In accordance with these findings, it is ordered that Ira M. Long, Jr., be allowed the sum of $6,871.93 representing fees in the amount of $6,675.00 and reimbursement of expenses in the sum of $199.43. This order shall serve as my certification required under 18 U.S.C. § 3006A(d)(3).

ment cannot do other than lend a quality of impeachment to the papers that care, in the first instance, could have avoided.