**UNITED STATES of America, Appellee,**

v.

**Joaquin SANDOVAL, Defendant–Appellant.**

**No. 07–2346–cr.**

United States Court of Appeals, Second Circuit.

Sept. 24, 2008.

Jane Simkin Smith, Millbrook, NY, for Defendant–Appellant.

Harry A. Chernoff (Katherine Polk Failla, of counsel), Assistant United States Attorneys for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, NY, for Appellee.

Present: Hon. JOHN M. WALKER, JR., Hon. ROBERT A. KATZMANN, Hon. JOHN R. GIBSON,[1] Circuit Judges.

### SUMMARY ORDER

Defendant-appellant Joaquin Sandoval appeals his conviction and sentence, primarily to 72 months' imprisonment, after his guilty plea to an information charging one count of access-device fraud, in violation of 18 U.S.C. § 1029(a)(2) and (b)(1), and one count of conspiracy to commit access-device fraud, in violation of 18 U.S.C. § 1029(b)(2). Sandoval argues that (1) the government breached the plea agreement, (2) the district court improperly varied upward from the Sentencing Guidelines without sufficient notice, (3) the district court incorrectly calculated the advisory Guidelines range with respect to loss amount and number of victims, (4) the order of restitution was inadequate, and (5) Sandoval was erroneously sentenced beyond the statutory maximum. We address each argument in turn and assume the parties' familiarity with the facts, procedural history, and specification of issues on appeal.

**(1) Alleged Breach of the Plea Agreement**

Sandoval argues that the government breached its promise in the plea agreement to "not recommend any specific sentence to the Court," when it stated in its sentencing memorandum, "the Court should sentence Joaquin Sandoval to a term of imprisonment within the range of 78 to 97 months." The government, however, correctly responds that it was released from its obligations under the plea agreement when Sandoval broke his promise to provide assistance to the government by jumping bail. We have held on numerous occasions that a material breach of a plea agreement excuses the government from its obligations under the agreement. *See, e.g., United States v. Byrd,* 413 F.3d 249, 251 (2d Cir.2005) (per curiam) ("When the defendant is the party in breach, the government is entitled to specific performance of the plea agreement or to be relieved of its obligations under it."); *United States v. Merritt,* 988 F.2d 1298, 1313 (2d Cir.1993) ("[A] defendant who materially breaches a plea agreement may

---

1. The Honorable John R. Gibson, of the United States Court of Appeals for the 1 Eighth     Circuit, sitting by designation.

not claim its benefits."). On similar facts, we have held that a defendant who has jumped bail has "forfeited any rights he arguably may have had based on his cooperation agreement with the government." *United States v. El–Gheur*, 201 F.3d 90, 93–94 (2d Cir.2000). Indeed, it is hard to imagine a more material breach of an agreement to provide substantial assistance than to flee, only to be captured after attempting two additional escapes from the police.

(2) Upward Departure Without Notice

■ Sandoval argues that the sentence should be vacated because Judge Chin sentenced him above the advisory Guidelines range without providing notice, in violation of Fed. R. Crim P. 32(h). As defense counsel conceded at oral argument, the Supreme Court, however, recently foreclosed this argument in *Irizarry v. United States*, —— U.S. ——, 128 S.Ct. 2198, 171 L.Ed.2d 28 (2008), explicitly overruling our contrary holding in *United States v. Anati*, 457 F.3d 233 (2d Cir.2006). The Court held that Rule 32(h) now applies only to "departures" under 18 U.S.C. § 3553(b), and not "variances" under 18 U.S.C. § 3553(a). *Irizarry*, 128 S.Ct. at 2203–04. In this case, the district court's sentence above the advisory Guidelines range was clearly a "variance," as it cited numerous § 3553(a) factors, such as "the history and characteristics of the defendant, the need to protect the public of further crimes of the defendant, deterrence, to promote respect for the law." Therefore, Rule 32(h)'s requirement of advance notice does not apply.

(3) Calculation of the Guidelines Range

Sandoval argues that the district court incorrectly calculated the loss amount and number of victims for purposes of the Guidelines determination. "[W]e review a district court's conclusions of law de novo, its application of the Guidelines on issues of fact for clear error, and its exercise of discretion with respect to departures for abuse of that discretion." *United States v. Ebbers*, 458 F.3d 110, 126 (2d Cir.2006).

■ Sandoval first argues that the district court erred in imposing a ten-level enhancement for a loss of over $120,000 under U.S.S.G. § 2B1.1, pursuant to its finding that "that the intended loss was more than $120,000." "[L]oss is the greater of actual loss or intended loss," and intended loss means "the pecuniary harm that was intended to result from the offense." U.S.S.G. § 2B1.1 cmt. n. 3. Application note 3(C) provides that the "court need only make a reasonable estimate of the loss," and because "[t]he sentencing judge is in a unique position to assess the evidence and estimate the loss based on that evidence[,] . . . the court's loss determination is entitled to appropriate deference." *Id.; see also United States v. Singh*, 390 F.3d 168, 192 (2d Cir.2004). The evidence here supports the district court's finding that the credit limit on the stolen card Sandoval was using on the date of his arrest was $100,000, and that Sandoval intended to use all of it. Moreover, Sandoval had admitted to numerous thefts of other credit cards from victims' lockers in upscale gyms, and to using stolen credit cards to steal at least $40,000 in cash at various casinos. The district court's finding on loss amount was therefore not clearly erroneous.

■ Sandoval also argues that the district court erred by applying a two-level enhancement because the offense involved ten or more victims under U.S.S.G. § 2B1.1(b)(2). Referring to Sandoval's participation in the scheme to steal credit cards from gym lockers, the district court stated its intention to "increase two levels because I find that ten or more victims

were involved when you look at the relevant conduct." Sandoval argues on appeal that (1) there is no evidence that there were ten victims, and (2) only a financial institution can be a "victim" under the Guidelines. Neither argument has merit. First, it was not clearly erroneous for the district court to find that there were more than ten victims of the scheme, as Sandoval admitted to being part of a wide-ranging conspiracy that stretched over at least two years. Sandoval used a stolen credit card at three stores on the date of his arrest and admitted three specific instances when he used stolen credit cards to obtain fraudulent cash advances at casinos. It was hardly error for the district court to find that the conspiracy of which Sandoval was a part claimed three more victims during the more than two years Sandoval was involved. Second, we rejected the argument that only financial institutions may be victims of credit-card fraud in our recent decision in *United States v. Abiodun,* 536 F.3d 162, 169 (2d Cir.2008). As such, the district court's finding with respect to the number of victims was not clearly erroneous.

(4) Restitution

■ Sandoval argues that the restitution order was inadequate for failure to follow the procedures required by 18 U.S.C. § 3664. Because Sandoval did not object to the restitution order below, we review only for plain error. *United States v. Dukagjini,* 326 F.3d 45, 59 (2d Cir.2003). Under the familiar standard for plain-error review, "there must be (1) error, (2) that is plain, and (3) that affects substantial rights. If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States,* 520 U.S. 461, 467, 117 S.Ct. 1544,

137 L.Ed.2d 718 (1997) (internal citations and quotation marks omitted). Assuming for purposes of argument that the district court committed error that was plain, Sandoval's argument must fail because he cannot prove he was prejudiced by the district court's error. In particular, the $15,000 he argues he did not successfully steal may eventually be credited toward his overall restitution obligation under 18 U.S.C. § 3664(j)(1), and, with respect to any deficiencies in reporting requirements, there has been no showing that Sandoval suffered any "actual prejudice." *See United States v. Zakhary,* 357 F.3d 186, 191 (2d Cir.2004); *see also United States v. Douglas,* 525 F.3d 225, 253 (2d Cir.2008) (rejecting appeal when defendant "has provided no indication that he was in any way prejudiced").

(5) Sentence Beyond the Statutory Maximum

■ Sandoval correctly notes that the district court incorrectly sentenced him beyond the statutory maximum on the conspiracy count. Sandoval pleaded guilty to one count of access-device fraud and one count of conspiracy to commit access-device fraud. The substantive count carries a ten-year maximum sentence, but the conspiracy count carries only a five-year maximum. 18 U.S.C. § 1029(c), (b)(2). The district court sentenced Sandoval to 72 months' imprisonment on *each* count, to run concurrently. Sandoval is therefore correct, and the government agrees, that the sentence on the conspiracy count is beyond the statutory maximum. Sandoval argues that we must remand for resentencing. But in a situation like this one, where the aggregate sentence is proper, we may modify the sentence by reducing the term of imprisonment on the conspiracy count to 60 months and leaving the overall 72–month term of imprisonment

intact. *See United States v. McLeod,* 251 F.3d 78, 83–84 (2d Cir.2001).

For the foregoing reasons, we hereby **AFFIRM** the judgment of the district court and **MODIFY** the sentence on the conspiracy count to 60 months' imprisonment, while leaving the overall sentence of 72 months' imprisonment intact.